# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| NOROC PARTNERS, LLC, et al.,  *Plaintiffs* § § § | |
| v. § | Case No. 1:25-cv-00655-ADA-SH |
| BENJAMIN PONDER and § AMY PONDER, § *Defendants* § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO: THE HONORABLE ALAN D ALBRIGHT
    UNITED STATES DISTRICT JUDGE

Before the Court are Defendants' Partial Motion to Dismiss Plaintiffs' First Amended Complaint, filed June 14, 2025 (Dkt. 11); Plaintiffs' Response, filed June 27, 2025 (Dkt. 12); and Defendants' Reply, filed July 7, 2025 (Dkt. 14).[1]

### I. Plaintiffs' Allegations

Plaintiffs Noroc Partners, LLC, William Sterling as Trustee of the William Sterling 2012 Trust, Adam Nunes, Josh Levine, and Darren Mulholland are a group of investors from New York and Texas. They bring this securities fraud suit against Defendants Benjamin Ponder and Amy Ponder and make the following allegations in their First Amended Complaint (Dkt. 8).

The Ponders formed Ponder Foods, LLC in July 2019. *Id.* ¶ 10. They conducted two rounds of "startup financing" to raise money for the company in March 2020 and November 2021. Dkt. 11 at 2. Mr. Ponder made many representations to Plaintiffs about the value of Ponder Foods to encourage them to invest. *Id.* ¶ 11. Plaintiffs later discovered that he grossly misrepresented Ponder

---

[1] The District Court referred this matter to this Magistrate Judge for disposition of all non-dispositive motions and report and recommendation on all case-dispositive matters, pursuant to 28 U.S.C. § 636(b), Federal Rule of Civil Procedure 72, Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, and the District Court's Standing Order. Dkt. 3.

1

Foods' assets, financials, operating losses, existing client relationships, and projections. *Id.* ¶ 12. Based on the representations, Plaintiffs invested $1.95 million in Ponder Foods in mid-2020 in exchange for Class A equity in the company ("2020 Investment") and $3.1 million in November 2021 ("2021 Investment"). Dkt. 8 ¶ 13; Dkt. 11 at 2.

Although Mr. Ponder knew Ponder Foods was suffering unstainable losses in its orders as early as mid-2021, he never disclosed to Plaintiffs that "Ponder Foods' entire business was in immediate peril." *Id.* ¶ 35. Instead, he continued to make false representations, including providing Plaintiffs with an Investor Summary in November 2021 that contained false and deceptive claims about the company's viability and revenue projections. *Id.*

In July 2022, Mr. Ponder secretly transferred substantial assets from Ponder Foods to Ponder Brands, LLC and obtained a $500,000 loan. *Id.* ¶ 40. He auctioned Ponder Foods' remaining assets in August 2022. *Id.* Ponder Foods ceased operations the same month and Plaintiffs "suffered a complete loss of their $5,050,000 investment in Ponder Foods as a result of Defendants' tortious conduct." *Id.* ¶ 50.

Plaintiffs sued the Ponders in state district court in Travis County, Texas on March 28, 2025. Dkt. 1-2. The Ponders removed the suit to this Court on May 1, 2025, invoking the Court's diversity jurisdiction under 28 U.S.C. § 1332. Dkt. 1. Plaintiffs assert claims for (1) fraud/fraudulent inducement; (2) fraud by nondisclosure; (3) Texas Securities Act ("TSA") fraud; (4) statutory fraud; and (5) fraudulent transfer under the Texas Uniform Fraudulent Transfer Act ("TUFTA"), Tex. Bus. & Com. Code §§ 24.005, 24.006. Dkt. 8. Plaintiffs assert the first four claims against Mr. Ponder only and the last claim against both Defendants. They seek actual monetary damages, exemplary damages, attorneys' fees, and costs.

## II.    Legal Standards

The Ponders seek partial dismissal under Rules 8, 9(b), and 12(b)(6). Rule 8(a)(2) "generally requires only a plausible 'short and plain' statement of the plaintiff's claim" showing that the plaintiff is entitled to relief. *Skinner v. Switzer*, 562 U.S. 521, 530 (2011). A complaint alleging fraud also must satisfy the heightened pleading standard of Rule 9(b), which provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

> When the Rule 9(b) pleading standard applies, the complaint must contain factual allegations stating the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby. In other words, to properly allege fraud under Rule 9(b), the plaintiff must plead the who, what, when, where, and why as to the fraudulent conduct.

*In re Life Partners Holdings*, 926 F.3d 103, 117 (5th Cir. 2019) (cleaned up).

Rule 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted. In deciding a Rule 12(b)(6) motion, the court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). A complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

While the failure to state a claim inquiry typically focuses on whether the plaintiff plausibly alleges the elements of a claim, Rule 12(b)(6) dismissal also may be appropriate based on a successful affirmative defense if the affirmative defense appears on the face of the complaint. *Bell*

*v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 320 (5th Cir. 2022). "In this situation, it must be apparent from the plaintiff's own allegations that a defense is fatal to the claim." *Id.*

A motion to dismiss under Rule 12(b)(6) is viewed with disfavor and rarely granted. *Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024). In determining whether a plaintiff's claims survive such a motion, the factual information to which a court addresses its inquiry is limited to the (1) facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201. *Gomez v. Galman*, 18 F.4th 769, 775 (5th Cir. 2021) (per curiam).

## III.  Analysis

The Ponders move to dismiss (1) the claim against Mrs. Ponder; (2) all claims asserted by Plaintiff Noroc; (3) the fraud claims based on the 2020 Investment; and (4) the TUFTA claims against Mr. Ponder based on the July 2022 transfer of assets to Ponder Brands, LLC.

### A. TUFTA Claims Against Amy Ponder

The TUFTA "aims to prevent debtors from fraudulently placing assets beyond the reach of creditors." *GE Capital Com. Inc. v. Worthington Nat'l Bank*, 754 F.3d 297, 302 (5th Cir. 2014). Section 24.005(a)(1) provides that "a transfer from a debtor to a creditor is fraudulent if made with actual intent to hinder, delay, or defraud any other creditor of that debtor." *Janvey v. Libyan Inv. Auth.*, 840 F.3d 248, 265 (5th Cir. 2016) (citing TEX. BUS. & COM. CODE § 24.005(a)(1)). TUFTA provides that "either 'the first transferee of the asset or the person for whose benefit the transfer was made' may be held liable for such a transfer." *Id.* (quoting § 24.009(b)(1)). Thus, a beneficiary of the fraudulent transfer may be liable under TUFTA. *Id.*

Plaintiffs allege that Mrs. Ponder violated § 24.005(a)(1) as a beneficiary of the transfer of assets from debtor Ponder Foods to Ponder Brands, LLC on July 18, 2022 "for the grossly inadequate and nominal consideration of $10.00" ("July 2022 Transfer") and the repayment of

$500,000 from Ponder Foods "derived directly from Plaintiffs' November 2021 investment" to the Ponders in November 2021 ("November 2021 Transfer"). Dkt. 8 ¶ 99. Plaintiffs also assert claims under TUFTA §§ 24.005(a)(2), 24.006(a), and 24.006(b). *Id.* ¶¶ 101-03. The Ponders argue that none of these allegations states a plausible claim for relief.

### 1. Section 24.005(a)(1) Claim based on the July 2022 Transfer

The Ponders contend that Plaintiffs' § 24.005(a)(1) claim against Mrs. Ponder based on the July 2022 Transfer fails because "they do not allege that Ms. Ponder is a transferee or the beneficiary." Dkt. 11 at 8. But Plaintiffs specifically allege in their Complaint that Mrs. Ponder benefited from the July 2022 Transfer. For example:

- "Defendants Benjamin Ponder and Amy Ponder were beneficiaries and/or recipients of certain transfers by Debtor." Dkt. 8 ¶ 98.

- "Defendant Benjamin Ponder, acting for his own benefit and the benefit of Defendant Amy Ponder, his wife and also a Managing Member of Debtor, caused Debtor to make transfers of the debtor's assets in violation of [TUFTA]. These transfers include but are not limited to: [the July 2022 Transfer] and [the November 2021 Transfer]." *Id.* ¶ 99.

- Mrs. Ponder is "the person[] for whose benefit the transfers were made." *Id.* ¶ 104.

Plaintiffs allege Mrs. Ponder benefited from the transfers because they hid assets from creditors and were made "to recoup the startup money" the Ponders loaned Ponder Foods. *Id.* ¶ 33.

Plaintiffs' allegations are sufficient at the motion to dismiss stage to plausibly allege that Mrs. Ponder is a "person for whose benefit the transfer was made" under § 24.009(b)(1). *See Citizens Nat'l Bank of Tex. v. NXS Const., Inc.*, 387 S.W.3d 74, 85 (Tex. App.—Houston [14th Dist.] Nov. 1, 2012, no pet.) (stating that defendant was beneficiary when transfer directly benefited it by increasing value of company it owned and needed to sell); *Esse v. Empire Energy III, Ltd.*, 333 S.W.3d 166, 181 (Tex. App.—Houston [1st Dist.] July 22, 2010, pet. denied) (stating that owners were beneficiaries when they owned and controlled nearly all shares in the transferee entity and the transfer "resulted in more than just an incidental or indirect benefit to them").

### 2. Section 24.005(a)(1) Claim based on the November 2021 Transfer

Defendants argue that Plaintiffs' § 24.005(a)(1) TUFTA claim against Mrs. Ponder based on the November 2021 Transfer also fails because Mrs. Ponder was "a person who took in good faith and for a reasonably equivalent value" as defined in the statute. Section 24.009(a) provides: "A transfer or obligation is not voidable under Section 24.005(a)(1) of this code against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee." Thus, "TUFTA allows a transferee who receives a transfer in good faith and in exchange for reasonably equivalent value to avoid a clawback action by the defrauded creditor." *Janvey v. GMAG, LLC*, 977 F.3d 422, 427 (5th Cir. 2020). To demonstrate good faith, a transferee must show that "its conduct was honest in fact, reasonable in light of known facts, and free from willful ignorance of fraud." *Janvey v. GMAG, LLC*, 592 S.W.3d 125, 129 (Tex. 2019) (answering certified question). In applying this standard, courts consider "whether a transferee received fraudulent transfers with actual knowledge or inquiry notice of fraud." *Id.* A person is on inquiry notice when she is "aware of facts that would have prompted a reasonable person to investigate." *Id.* at 130.

The transferee bears the burden to prove TUFTA's good faith affirmative defense. *Id.* at 129. In addition, because good faith is an affirmative defense and Defendants seek dismissal on that basis, the good faith defense must appear on the face of the complaint. *Bell*, 27 F.4th at 320. "[I]t must be apparent from the plaintiff's own allegations that a defense is fatal to the claim. In other words, the pleadings must reveal beyond doubt that the plaintiffs can prove no set of facts that would overcome the defense or otherwise entitle them to relief." *Id.* (citations omitted).

Defendants argue that Plaintiffs' allegations establish as a matter of law that Mrs. Ponder acted in good faith under TUFTA because "the Complaint nowhere alleges that Defendant Amy Ponder had the requisite knowledge and intent to defraud." Dkt. 11 at 9-10. As explained above, it is Defendants' burden to prove their affirmative defense that Mrs. Ponder "took in good faith and for

6

a reasonably equivalent value." The absence of allegations of bad faith does not establish Defendants' good faith affirmative defense. Instead, to demonstrate good faith, Defendants must show that Mrs. Ponder's conduct "was honest in fact, reasonable in light of known facts, and free from willful ignorance of fraud." *Janvey*, 592 S.W.3d at 129. These allegations must appear on the face of the complaint. *Bell*, 27 F.4th at 320. Because Plaintiffs do not allege that Mrs. Ponder's conduct was honest, reasonable, or free from willful ignorance of fraud, their own pleadings do not show that Mrs. Ponder "took in good faith." *See Rotstain v. Trustmark Nat'l Bank*, No. 3:09-CV-2384-N, 2015 WL 13034513, at *8 (N.D. Tex. Apr. 21, 2015) (denying motion to dismiss based on good-faith affirmative defense that did not "clearly appear on the face of the complaint"); *Janvey v. Suarez*, 978 F. Supp. 2d 685, 696 (N.D. Tex. 2013) (same); *Janvey v. Alguire*, 846 F. Supp. 2d 662, 673 (N.D. Tex. 2011) (same).

### 3. Section 24.006(b) Claim

The Ponders argue that Plaintiffs' § 24.006(b) TUFTA claim against Mrs. Ponder based on the November 2021 Transfer is time-barred under the statute's one-year statute of limitations. Plaintiffs concede this claim is time-barred. Dkt. 12 at 9. This Magistrate Judge recommends that the claim be dismissed.

## B. Noroc's Claims

Next, the Ponders argue that Plaintiff Noroc should be dismissed because it neither alleges that it justifiably relied on Mr. Ponder's false representation nor states a plausible claim for relief under TUFTA.

### 1. Fraud Claims

Noroc alleges that it was fraudulently induced to invest in Ponder Foods after Mr. Ponder falsely represented that the company had (1) "over $6 million in current assets" in his December 2019 Confidential Investor Presentation to Plaintiffs, and (2) an "estimated asset inventory

7

(equipment) value of $6-8M" in a "Ponder Foods Confidential Series A Investment Summary" email sent to Plaintiffs in March 2020. Dkt. 8 ¶ 54-55. Noroc alleges that it justifiably relied on these representations about the value of Ponder Foods' assets because "it made what would have otherwise been a risky investment into a low-risk investment. If the business were to fail, Plaintiffs could be repaid for their investment from the sale of Ponder Foods' extensive and valuable assets (which purportedly far exceeded its liabilities)." Dkt. 8 ¶ 90.

To allege a plausible fraud claim under Texas law, the plaintiff must allege: (1) the defendant "made a material representation that was false"; (2) the defendant "knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth;" (3) the defendant intended to induce the plaintiff to act on the representation; and (4) "the plaintiff actually and justifiably relied upon the representation and suffered injury as a result." *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., LLC*, 546 S.W.3d 648, 653 (Tex. 2018). The fourth element has two requirements: "the plaintiff must show that it actually relied on the defendant's representation and, also, that such reliance was justifiable." *Id.* The parties dispute the last requirement: whether Noroc's reliance on Mr. Ponder's statements about the value of the assets was justifiable.

"Justifiable reliance usually presents a question of fact. But the element can be negated as a matter of law when circumstances exist under which reliance cannot be justified." *Id.* at 654 (citation omitted). In determining whether justifiable reliance is negated as a matter of law, courts consider the nature of the parties' relationship and the contract at issue. *Id.* In an arm's-length transaction, the defrauded party must exercise ordinary care for the protection of its own interests. *Id.* Thus, "an oral representation that is directly contradicted by the express, unambiguous terms of a written agreement between the parties is not justified as a matter of law." *Id.* at 658. A party

8

also may not justifiably rely on a misrepresentation if there are multiple "red flags" indicating such reliance is unwarranted. *Id.* at 655.

Defendants argue that Noroc's reliance on Mr. Ponder's representations was not justifiable as a matter of law because (1) the March 29, 2020 Class A Unit Subscription Agreement (Dkt. 11-3) disclaimed reliance, and (2) there were "red flags" that put Noroc and the other Plaintiffs on notice of the allegedly misrepresented value of Ponder Foods' assets. Dkt. 11 at 11.

    a. **No Disclaimer**

Under Texas law, a contract is subject to avoidance on the ground of fraudulent inducement. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 331 (Tex. 2011). It has long been the rule "that a written contract even containing a merger clause can nevertheless be avoided for antecedent fraud or fraud in its inducement and that the parol evidence rule does not stand in the way of proof of such fraud." *Id.* (citation omitted). In *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171 (Tex. 1997), the Texas Supreme Court recognized an exception to this rule, holding that "when sophisticated parties represented by counsel disclaim reliance on representations about a specific matter in dispute, such a disclaimer may be binding, conclusively negating the element of reliance in a suit for fraudulent inducement." *Italian Cowboy*, 341 S.W.3d at 332. But the Texas Supreme Court has

> repeatedly held that to disclaim reliance, parties must use clear and unequivocal language. This elevated requirement of precise language helps ensure that parties to a contract—even sophisticated parties represented by able attorneys—understand that the contract's terms disclaim reliance, such that the contract may be binding even if it was induced by fraud.

*Id.* at 336 (citation omitted). "Pure merger clauses, without an expressed clear and unequivocal intent to disclaim reliance or waive claims for fraudulent inducement, have never had the effect of precluding claims for fraudulent inducement." *Id.* at 334.

9

The Ponders argue that these provisions of the Subscription Agreement "unequivocally disclaimed" Noroc's reliance on Mr. Ponder's representations about the value of Ponder Foods' assets:

> ***2.03 No Reliance.*** Except as set forth herein, Subscriber acknowledges that neither the Company nor any of its agents, employees or affiliates has made any representations or warranties, oral or otherwise, concerning the Company or the offering. In subscribing for the Class A Units, Subscriber is not relying upon any information, other than the results of its own or its representative's independent review of the Company's Limited Liability Company Agreement and the other materials provided to Subscriber by the Company (collectively, the "**Company Materials**").
>
> ***\*\*\****
>
> ***2.05 Opportunity to Ask Questions.*** Subscriber has received, analyzed and reviewed the Company Materials, has conducted its own due diligence investigation of the Company and has had an opportunity to ask questions of and receive answers from the Company, or a person or persons acting on its behalf, concerning the terms, conditions and risks of this investment, and all such questions have been answered to its full satisfaction. Subscriber has had an opportunity to obtain all additional information necessary to verify the accuracy of the foregoing.

Dkt. 11-3 at 4-5. The Court disagrees. The Subscription Agreement excluded from disclaimer representations made in "materials provided . . . by the Company." Plaintiffs allege that Mr. Ponder made the misrepresentations about Ponder Foods' assets in the company materials presented to them in December 2019 and February and March 2020 and in his Ponder Foods Confidential Series A Investment Summary. Dkt. 8 ¶¶ 16, 54-55, 66, 76, 88. Because these materials were provided to Plaintiffs on behalf of Ponder Foods, they are "Company Materials" excluded from the purported disclaimer. "There is a significant difference between a party disclaiming its *reliance* on certain representations, and therefore potentially relinquishing the right to pursue any claim for which reliance is an element, and disclaiming the *fact* that no other representations were made."

10

*Italian Cowboy*, 341 S.W.3d at 335. Nor does the "Opportunity to Ask Questions" provision disclaim Noroc's reliance on Mr. Ponder's statements as a matter of law.

The Ponders also argue that the "High Risk" provisions in the Subscription Agreement disclaim that Noroc's reliance on Mr. Ponder's statements was justifiable:

> ***2.08 High Risk.*** Subscriber understands that an investment in the Company represents a high degree of risk and is suitable only for those persons and entities having a substantial net worth, and who can afford to bear such risk. Subscriber has considered carefully the risks attendant to the purchase of the Class A Units including, without limitation, the Risk Factors. Subscriber has consulted its own legal, tax and financial advisors with respect to its investment and the risk inherent thereto and the tax ramifications of such investment. Subscriber understands the risks attendant to the purchase of the Class A Units and accepts the same knowingly and willingly.
>
> ***2.09 Sophistication.*** Subscriber: (i) can fend for itself; (ii) can bear the economic risk of losing its entire investment; (iii) does not have an overall commitment to not-readily-marketable investments that is disproportionate to its net worth, and its investment in the Class A Units will not cause such overall commitment to become excessive; (iv) has adequate means of providing for its current needs and possible future contingencies and has no need, and anticipates no need in the foreseeable future, for liquidity in its investment in the Class A Units; (v) has such knowledge and experience in financial and business matters that it is capable of evaluating the risks and merits of this investment, or has retained advisors who have such knowledge and experience; and (vi) is familiar with the business and financial condition, properties, operations and prospects of the Company.

Dkt. 11-3 at 5-6. The Ponders contend these provisions preclude justifiable reliance because Plaintiffs cannot show "they were induced to purchase interests in the company with promises of low risk and high profits when subscription documents warn the investor of the high degree of risk." Dkt. 11 at 13 (cleaned up). But they do not clearly and unequivocally disclaim any reliance on the fraudulent misrepresentations that Mr. Ponder allegedly made about the company's assets. Standard merger provisions do not preclude fraudulent representations. *See Italian Cowboy*, 341 S.W.3d at 336 (holding that lease agreement did not disclaim reliance as a matter of law when "the

11

contract language was not clear or unequivocal about disclaiming reliance").[2] This Magistrate Judge finds that Defendants have not carried their burden to show that the Subscription Agreement specifically disclaims Noroc's reliance on Mr. Ponder's representations as a matter of law.

   **b. Red Flags**

Defendants also argue that "red flags" put Noroc and the other Plaintiffs on notice of the misrepresented value of Ponder Foods' assets. First, Defendants point to Mr. Ponder's statement in his March 2020 email:

> Ben and Amy Ponder made a cash purchase of substantially all of the assets of Frankie V's Kitchen (FVK) via a Chapter 11 Bankruptcy process in July 2019. The liquidation price of FVK was $2.5M, while the estimated asset inventory (equipment) value at the time was $6-8M. (The previous entity had raised--and squandered through reckless spending and perverse incentives--$30M in the previous three years. The good news/silver lining is that they bought a lot of excellent equipment.)

Dkt. 11-8 at 2.

Defendants argue:

> Mr. Ponder's specific statement that the assets in question had garnered only $2.5 million in a liquidation sale was a glaring red flag that put Plaintiffs on inquiry notice that they could not rely on the $6-8 million asset valuation in this email, or the prior presentation claiming that the assets were worth $6 million (both of which were 2-3 times the "liquidation price") to recoup their investment "[i]f the business were to fail."

Dkt. 11 at 15. The Court disagrees that this was a red flag because the statement that the Ponders acquired high-valued "excellent equipment" for the bargain "liquidation price of $2.5M" does not necessarily put Plaintiffs on notice that the "$6-8M" estimated value was false. Plaintiffs allege: "This story of arbitrage—acquiring valuable assets for pennies on the dollar—was the core of the

---

[2] In support of their "high risk" argument, Defendants rely on *Topalian v. Ehrman*, 954 F.2d 1125, 1132-33 & n.15 (5th Cir. 1992), which is distinguishable: It was decided on summary judgment, not a motion to dismiss, and the plaintiffs proffered no evidence that their reliance was justified.

fraudulent inducement. It was designed to make Plaintiffs feel they were getting in on an incredible opportunity in a secure investment, not to raise red flags about asset valuation." Dkt. 12 at 15. Because Plaintiffs' interpretation is plausible, the Court does not find that Mr. Ponder's email was a "glaring red flag."

The Ponders also argue that the purported disclaimers in the Subscription Agreements discussed above are "a second red flag that negates justifiable reliance." Dkt. 11 at 16. They contend that the disclaimers warned Plaintiffs that their investment "represents a high degree of risk" and that they needed to "verify the accuracy" of the information Ponder Foods had given them. *Id.* As explained above, the Court does not find that these provisions specifically disclaim Plaintiffs' reliance on Mr. Ponder's statements about the value of Ponder Foods' assets.

The Texas Supreme Court has rejected the notion that "the mere use of a negation-of-warranty provision" by itself can be a sufficient red flag to "wholly negate justifiable reliance." *Orca Assets*, 546 S.W.3d at 656. Moreover, there must be multiple "red flags" indicating that reliance is unwarranted; a single red flag cannot preclude justifiable reliance "on its own and as a matter of law." *Id.* at 655. Because Defendants do not show that multiple red flags preclude reliance, the Court finds that Noroc's fraud claims are not precluded as a matter of law.

### 2. TUFTA Claim

To allege a plausible claim under TUFTA, a plaintiff must allege that (1) it is a "creditor" with a claim against a "debtor"; (2) the debtor transferred assets after, or a short time before, the plaintiff's claim arose; and (3) the debtor made the transfer with the intent to hinder, delay, or defraud the plaintiff. *In re Galaz*, 765 F.3d 426, 433 (5th Cir. 2014). A "creditor" is someone who has a "claim," which is "a right to payment or property, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed,

13

legal, equitable, secured, or unsecured." TEX. BUS. & COM. CODE §§ 24.002(3), (4). A "debtor" is "a person who is liable on a claim." *Id.* § 24.002(6).

Under Texas law, "one may bring an action under the TUFTA as a creditor of the transferor merely by virtue of a legal action, pending and unliquidated at the time of transfer, against the transferor." *Colonial Leasing Co. of New England, Inc. v. Logistics Control Grp. Int'l*, 762 F.2d 454, 458 (5th Cir. 1985). To withstand dismissal or summary judgment on such a claim, "a claimant need only show it has asserted against the transferor a cause of action that accrued prior to the transfer." *Id.*

Defendants argue that Noroc's TUFTA claims fail because Noroc is not a "creditor" and does not assert a "claim" against a "debtor." Plaintiffs allege that "Ponder Foods, LLC" is the debtor, not the Ponders, and Noroc sues only the Ponders. Dkt. 8 ¶ 96. Although Plaintiffs argue that Noroc's investment in Ponder Foods "gives rise to a cognizable equitable claim for recission and restitution" against Ponder Foods, Noroc has not asserted such a claim against the company. Dkt. 12 at 17. Because Noroc has not asserted a "claim" against a "debtor," Noroc does not allege a plausible TUFTA claim against the Ponders.

## C. Plaintiffs' Fraud Claims based on the 2020 Transfer

The Ponders also move to dismiss all fraud claims arising out of the 2020 Transfer, again contending that Plaintiffs' reliance on Mr. Ponder's representations was not justifiable because the Subscription Agreement contained a disclaimer of reliance and multiple "red flags" put Plaintiffs on notice about the actual value of Ponder Foods' assets. Dkt. 11 at 18-19. For the same reasons explained above, the Court finds that the Ponders do not show that reliance was unjustified as a matter of law.

The Ponders also argue that Plaintiffs' fraud claims under the TSA based on the 2020 Transfer are time-barred. The TSA provides that a suit must be brought within three years "after the date of

discovery of the untruth or omission, or after the date discovery should have been made by the exercise of reasonable diligence." TEX. GOV'T CODE § 4008.062(b)(1).

The Ponders contend that the "Confidential Investor Summary Q4 2021" sent to Plaintiffs in November 2021 stating that Ponder Foods had "approximately $5M in owned equipment," not $6 million to $8 million, should have alerted Plaintiffs that Mr. Ponders' previous representations about the assets were false. Dkt. 11 at 19 (quoting Complaint, Dkt. 8 ¶ 23). They argue that Plaintiffs should have known about the fraud as early as November 2021 but did not file their suit until March 2025, so their claim is time-barred.

As Plaintiffs point out, Mr. Ponder's statements about more than $6 million in company equipment were made two years before the reference to the "$5M" in company equipment. "Considering the normal depreciation of assets, the reference to 'approximately $5m in owned equipment' would not mandate that Plaintiffs knew or should have known of the falsity of the much earlier representations made by Benjamin Ponder concerning the value of Ponder Foods' assets." Dkt. 12 at 19.

Plaintiffs also allege that they did not become aware of the falsity of Mr. Ponder's statements about the value of the equipment until after the company collapsed in August 2022. Dkt.8 ¶¶ 84, 112. Because the Court must take Plaintiffs' allegations as true and Defendants do not show that Plaintiffs should have discovered the fraud by November 2021, the TSA claim is not time-barred.

**D. Plaintiffs' TUFTA Claims based on the 2022 Transfer of Assets**

Finally, the Ponders argue that Plaintiffs' TUFTA claims based on the 2022 Transfer of Assets does not state a plausible claim for relief against Mr. Ponder because Plaintiffs do not allege that he was a transferee of the July 2022 Transfer or that he personally benefitted from the transfer. The Court finds that Plaintiffs do allege that Mr. Ponder was a beneficiary of and personally participated and approved of both the transfers:

15

- "Defendants Benjamin Ponder and Amy Ponder were beneficiaries and/or recipients of certain transfers by Debtor." Dkt. 8 ¶ 98.

- "Defendant Benjamin Ponder, acting for his own benefit and the benefit of Defendant Amy Ponder, his wife and also a Managing Member of Debtor, caused Debtor to make transfers of the debtor's assets in violation of the Texas Uniform Fraudulent Transfer Act," identifying the July 2022 and November 2021 Transfers. *Id.* ¶ 9.

- Mr. Ponder, along with Mrs. Ponder, was "the first transferee of the assets transferred." *Id.* ¶ 104.

These allegations are sufficient at the motion to dismiss stage to plausibly allege that Mr. Ponder is a "person for whose benefit the transfer was made" under § 24.009(b)(1). *See Citizens Nat'l Bank*, 387 S.W.3d at 85.

### E. Conclusion

In summary, the Court agrees with Defendants that Plaintiffs' Section 24.006(b) TUFTA claim against Mrs. Ponder is time-barred and that Noroc does not state a plausible claim for relief under TUFTA. The Court recommends denying the motion to dismiss all other claims.

### IV. Recommendation

For these reasons, this Magistrate Judge **RECOMMENDS** that the District Court **GRANT IN PART** and **DENY IN PART** Defendants' Partial Motion to Dismiss Plaintiffs' First Amended Complaint (Dkt. 11). The Court **RECOMMENDS** that the District Court **GRANT** the Motion to Dismiss (1) Plaintiffs' Section 24.006(b) TUFTA claim against Defendant Amy Ponder, and (2) all of Plaintiff Noroc Partners, LLC's TUFTA claims against Defendants, but **DENY** the Motion to Dismiss as to all other claims.

### V. Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v.*

*United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on August 27, 2025.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE